UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| JOHN S., | ) | |
| Plaintiff | ) ) ) | |
| v. | ) ) | 1:18-cv-00089-LEW |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff John S.'s application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the May 24, 2017, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2.)[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of degenerative disc disease, osteoarthritis, and hypertension. (ALJ Decision ¶¶ 3, 4, R. 20 – 22.) Although Plaintiff had certain mental health diagnoses, which the ALJ recognized, the ALJ found the record did not establish a severe mental health impairment, nor an impairment that would interfere with the performance of basic work activity. (*Id.* ¶ 3.) The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform substantial gainful activity involving "simple work activities" and light exertion, up to six hours of sitting, standing, and walking (each) in an eight-hour day, occasional postures, and occasional reaching, handling, and fingering, provided that the work does not require Plaintiff to climb ladders, ropes and scaffolds, and does not expose him to vibrations and hazards. (*Id.* ¶ 5, R. 24.)

The ALJ accepted the testimony of a vocational expert that a person with Plaintiff's RFC, age, education, and vocational background could perform work that exists in substantial numbers in the national economy, including in representative jobs such as furniture retail clerk, usher, and storage facility rental clerk. (*Id.* ¶ 10, R. 29 – 30.) Based on his findings, the ALJ determined that Plaintiff was not under a disability for purposes of the Social Security Act. (*Id.* ¶ 11, R. 30.)

## Standard of Review

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y*

of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## Discussion

Plaintiff argues the ALJ did not cite substantial evidence in support of his assessment regarding the limitations imposed by Plaintiff's osteoarthritis and mental health. Plaintiff further contends the ALJ erred when he refused to consider evidence submitted fewer than five days prior to the hearing.

**1.     The ALJ's assessment of osteoarthritis**

Plaintiff contends the ALJ's decision is not supportable principally because the ALJ failed to consider properly the opinion of Robert Phelps, M.D, a treating source. When he examined Plaintiff in January 2016, Dr. Phelps observed that Plaintiff demonstrated good flexion, extension and rotation in his cervical spine, good shoulder motion with left sided pain, good elbow and forearm motion, good wrist motion with pain bilaterally, and good hand dexterity bilaterally. (R. 405.) Dr. Phelps noted the presence of arthritis, by history. (R. 407.) In his source statement, Dr. Phelps assessed "marked" limitations regarding Plaintiff's ability to lift, carry, stand, walk, sit, push and pull. He also assessed moderate to marked limitation in Plaintiff's ability to handle, finger and feel. (*Id*.)

The ALJ observed the opinion evidence "is notable [in] that no treating provider has described physical limitations in excess of the limitations found by State agency medical consultants, Archibald Green, D.O. (Ex. 1A, R. 91 – 93), and Benjamin Cortijo, M.D. Both Dr. Green and Dr. Cortijo determined that despite his impairments [Plaintiff] remained able to perform within a reduced range of light work." (Ex. 3A, R. 106 – 108). (R. 27.)

Dr. Cortijo was asked to review the record following Plaintiff's request for reconsideration, and to consider the findings of Dr. Phelps. Dr. Cortijo wrote:

> Physical exam at CE [consultative examination] reveals able to reach toes in lumbar flexion, decreased motor strength at right LE [lower extremity] 4/5, normal antalgic limping gait, unable to heel to toe walk due to balance or tandem gait[.] While fidgety with low back, the ability to reach 90 degrees in SLR [seated leg raise] test indicates good flexibility and not nerve root irritation, therefor no sitting limitations. Able to squat, therefore motor rating of 4/5 at right side is minimal. Limit l/c 20 lbs occ, 10 lbs freq, s/w [stand/walk] 6 hr/8 hr, sit 6 hr / 8 hr. Limitations as proposed are as of 07-01-15.

(R. 106.) Dr. Cortijo's RFC opinion supports the ALJ's findings in all areas except for Plaintiff's upper extremity reaching, pushing/pulling, and manual dexterity. With respect to upper extremity function, Dr. Cortijo found that Plaintiff has no manipulative limitations. (R. 107.) Plaintiff argues that because Dr. Cortijo did not acknowledge the osteoarthritis impairment, the ALJ necessarily judged matters entrusted to experts when he offered a finding concerning the degree of limitation resulting from osteoarthritis. (Statement of Errors at 4 – 8.)

After reviewing the evidence, including the expert evidence, the ALJ concluded that the record did not suggest that Plaintiff could not reach, handle, and finger occasionally, or that he was lacking in upper extremity strength, grip strength, or finger dexterity. (R. 26.)

4

In the ALJ's view, this evidence, including the opinion evidence, the history of conservative treatment, and Plaintiff's ability to care for his personal needs, prepare simple meals, do laundry, drive, shop, and socialize, supported a finding that Plaintiff was able to perform light work. (R. 26 – 27.)

Contrary to Plaintiff's argument, the ALJ supportably assessed the expert opinions and did not impermissibly interpret medical evidence. The ALJ's decision to afford "most weight" to Dr. Cortijo's opinion (R. 27) based on Dr. Cortijo's review of the medical records and the consistency of the opinions "with the evidence as a whole" (*id.*) is reasonable. The notes of Brian Daikh, M.D., a rheumatologist, which do not include any related limitations, are not inconsistent with the ALJ's determination. As the ALJ observed, Plaintiff "retains the ability to stand and ambulate without assistive device, his gait had been normal on the majority of examinations, and he has the continued ability to care for his personal needs, prepare simple meals, do laundry, drive, shop, and socialize." (*Id.*) (citing Exhs. 9E, 12E). Plaintiff's activities are also consistent with the ALJ's findings regarding Plaintiff's upper extremity limitations.

In short, the ALJ did not err in his assessment of the evidence related to Plaintiff's osteoarthritis.

## 2. The ALJ's review of mental health impairment

The ALJ found, at Step 2, that any impairment resulting from Plaintiff's mental health symptoms was not severe for Social Security purposes. Plaintiff argues the finding was in error and inconsistent with the ALJ's implicit recognition in the RFC finding of the severity of Plaintiff's mental health symptoms. (Statement of Errors at 8.)

5

At step 2 of the sequential evaluation process, a claimant must demonstrate the alleged impairments are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a de minimis burden and is designed to screen groundless claims. *McDonald v. Sec'y of HHS,* 795 F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. See also Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even

6

severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.

The ALJ considered the evidence of mental health impairment, which evidence included the treatment records of Rowena Tessmann, Ph.D., PMH-NP. (Exs. 3F, 5F, 8F, 10F.) The ALJ reviewed the reported symptoms, i.e., hopelessness, anhedonia, poor sleep, and difficulty sleeping, and also the medication history. (R. 20.) Dr. Tessmann offered a mental RFC opinion (Ex. 10F) in which she assessed Plaintiff's prognosis as "fair" and found a degree of limitation that would be inconsistent with full-time employment. The ALJ gave Dr. Tessmann's opinion "limited weight" (R. 21), after finding that some of the findings were contradicted by Dr. Tessmann's treatment notes. For example, the ALJ noted that Dr. Tessmann found Plaintiff seriously limited in the ability to maintain concentration and attention, yet she recorded in her treatment notes that Plaintiff's relevant performance was between "fair" and "within normal limits." (R. 21, citing Ex. 3F:2, 5; 8F:1, 5, 7.) Similarly, while Dr. Tessmann opined that Plaintiff is seriously limited in the ability to adhere to basic standards of neatness and cleanliness, her notes reflect that Plaintiff was "always well groomed and appropriately dressed." (R. 21, citing Ex. 5F:1.) Furthermore, although Dr. Tessmann found that Plaintiff is seriously limited in his ability to maintain socially appropriate behavior, her notes did not include any such findings or observations, or reports of pertinent subjective complaints. (R. 21.) The ALJ's reasoning is sound and reasonably supports the decision to afford limited weight to the opinions of Dr. Tessmann.

The ALJ's step 2 finding was also informed by the consultative examination report of Nadir Behrem, Psy. D. Dr. Behrem opined that Plaintiff's mental health symptoms appear to be "largely managed with psychiatric medications," evince only "mild depressive symptoms," and are compatible with work activity, provided that Plaintiff maintains medications. (Ex. 7F, R. 414 – 15.) More specifically:

> In terms of his work-related abilities, Mr. [S] is presently able to communicate effectively with others. However, if he were to experience mania (which he reportedly has not experienced when on psychiatric medications) his ability to communicate would likely be diminished. He is able to concentrate and sustain in work-related tasks. He is able to interact appropriately with members of the public, coworkers, and superiors. He is able to follow instructions, remember information, and learn from experience.

(R. 415.)

Finally, the Disability Determination Services consulting medical experts concluded that Plaintiff's mental health symptoms are not severe for purposes of the Social Security Act. (Ex. 1A, Thomas Knox, Ph.D.; Ex. 3A, Robert Campion, MD.) Notably, both experts considered two years of Dr. Tessmann's treatment notes and the consultative examination report of Dr. Phelps. (R. 89 – 90, 103 – 104.) The consultative experts' opinions, including the medical source statement of Dr. Phelps, provide substantial evidence to support the ALJ's step 2 finding.

Nevertheless, Plaintiff argues the ALJ made a mental RFC finding, which demonstrates that the ALJ believed Plaintiff has a severe mental impairment. The fact that the ALJ included a mental RFC finding, however, does not require a remand.[2] The ALJ's

---

[2] If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted

8

assessment reflects that Plaintiff is capable of meeting the mental demands of "simple work activities." The ALJ found Plaintiff "able to understand, remember, and apply information and focus on and complete simple work activities; able to maintain concentration, persistence, or pace for simple work activities; able to manage simple social demands; able to adapt to routine changes and manage oneself." (R. 24, ¶ 5.) If the ALJ erred by including this finding in the RFC without finding a severe mental impairment, the finding is harmless where, as in this case, the finding is more favorable to the claimant, substantial evidence otherwise supports the ALJ's RFC finding, and inclusion of the finding is not material to the ultimate disability determination.[3]

Plaintiff argues, however, that the record will not support the ALJ's finding that Plaintiff is able to "adapt" and "manage" himself, because this aspect of mental work capacity is the product of a new regulatory scheme that was not applied by Drs. Phelps, Knox, and Campion, but came into effect in January 2017, a few months before the hearing before the ALJ. (Statement of Errors at 11 – 12 & n.5.)

Effective January 17, 2017, the Social Security Administration implemented new rules for evaluating mental disorders. Revised Medical Criteria for Evaluating Mental

---

impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010).

[3] Even if Plaintiff persuaded the Court that the ALJ erred when he found Plaintiff's mental impairment was not severe, because the ALJ included a mental impairment limitation, Plaintiff is unable to demonstrate that the error was prejudicial. Remand, therefore, would not be warranted. *Bolduc*, 2010 WL 276280, at *4 n. 3 ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

9

Disorders, 81 FR 66138-01. Pursuant to the rule change, the Administration now considers "[f]our broad functional areas in which [adjudicators] will rate the degree of [a claimant's] functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3).[4] The "adapt or manage onself" criterion is new language, and while the ALJ found Plaintiff had this capacity with regard to simple work activity, the consulting experts did not directly opine on the new criterion in the context of their step 2 opinions.

Plaintiff's argument is unconvincing. Given the issues that are relevant to a person's mental functioning, the new criterion is not necessarily a factor that treating and consulting experts have not considered. The findings of the experts can fairly be interpreted to have assessed Plaintiff's ability to manage himself. Presumably, any assessment of the impact of a mental health issue on a person's ability to work considers the person's ability to manage himself or herself. Plaintiff's argument that a relatively minor change in the regulation renders the pre-modification opinions unreliable is unavailing.

In sum, the ALJ's findings regarding Plaintiff's mental impairments and the impact of the impairments on Plaintiff's work capacity are supported by substantial evidence in the record.[5]

---

[4] The prior formulation was (1) restrictions on activities of daily living; (2) difficulties maintaining social functioning; (3) difficulties in maintaining concentration, persistence, and pace; and (4) repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404.1520a (2016).

[5] Because the ALJ's RFC finding is supported by substantial evidence in the record, Plaintiff's argument that the ALJ erred at Step 5 of the process fails.

### 3. The ALJ's evidentiary ruling

Plaintiff contends the ALJ erred when he did not consider evidence Plaintiff presented fewer than five days before the hearing before the ALJ. (Statement of Errors at 13 – 14.) Plaintiff maintains that due to a rule change, the five-day rule was not applicable when the ALJ made the evidentiary decision. (*Id.*)

According to Plaintiff, the evidence consists of "six pages from Dr. Tessman." (*Id.* at 14.) Plaintiff, however, has not demonstrated that the records would have or should have produced a different result. Furthermore, particularly given the ALJ's review and assessment of Dr. Tessmann's notes and RFC opinion, a review of the exhibit (ECF No. 9-2, R. 78 – 83) does not reveal any cause for remand.

### CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

### NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection. Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 6th day of February, 2019.